UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

TRUSTEES OF THE NORTHEAST CARPENTERS HEALTH, PENSION, ANNUITY, APPRENTICESHIP, and LABOR MANAGEMENT COOPERATION FUNDS,

                              Petitioners,

-against-

SAMAP U.S.A. CORP.,

                              Respondent.

19 CV _____

**PETITION TO CONFIRM AN ARBITRATION AWARD**

---

Petitioners, Trustees of the Northeast Carpenters Health, Pension, Annuity, Apprenticeship, and Labor Management Cooperation Funds ("Petitioners" and/or the "Funds") by and through their attorneys, Virginia & Ambinder, LLP ("V&A"), as and for their Petition to Confirm an Arbitration Award, respectfully allege as follows:

## NATURE OF THE ACTION

1. This is an action under section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(a)(3); section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185, to confirm and enforce an Arbitrator's Award rendered pursuant to a series of collective bargaining agreements between the New England Regional Council of Carpenters f/k/a the Northeast Regional Council of Carpenters ("Union") and Samap U.S.A. Corp. ("Respondent").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, and 29 U.S.C. §§ 185 and 1132(e)(1).

3. Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2) because the ERISA Funds (as defined below) are administered in this district.

## THE PARTIES

4. Petitioners Trustees of the Northeast Carpenters Health, Pension, Annuity and Apprenticeship Funds (the "ERISA Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with ERISA. The Trustees are fiduciaries of the ERISA Funds within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21). The ERISA Funds maintain their principal place of business at 270 Motor Parkway, Hauppauge, New York 11788.

5. Petitioners Trustees of the Northeast Carpenters Labor Management Cooperation Fund (the "Labor Management Fund") are employer and employee trustees of a labor management cooperation committee established under section 302(c)(9) of the LMRA, 29 U.S.C. § 186(d)(9). The Labor Management Fund maintains its principal place of business at 270 Motor Parkway, Hauppauge, New York 11788.

6. Respondent is a limited liability company incorporated under the laws of the State of New Jersey. At relevant times, Respondent was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142. Respondent maintains its principal place of business at 165 Amboy Road, Suite # 709, Morganville, New Jersey 07751.

## THE ARBITRATION AWARD

7. On or about August 6, 2015, Respondent became a member of the Building Contractors Association, Inc. of New York ("BCA-NY"). A copy of the BCA-NY designation list is annexed hereto as **Exhibit A**.

8. On or about September 10, 2015, Respondent also became of a member of the Associated Construction Contractors of New Jersey (the "ACC-NJ") formerly known as the Building Contractors Association of New Jersey. A copy of the 2015 ACC-NJ members designation list is annexed hereto as **Exhibit B.**

9. The 2015 ACC-NJ member designation list provides that, the designation list is effective for the period covering May 1, 2013 through April 30, 2016. *See* Ex. B.

10. As a member of the BCA-NY and the ACC-NJ, Respondent agreed to be bound to the collective bargaining agreements between the ACC-NJ and the Union and the BCA-NY and the Union, including all Memorandums of Understanding thereto. Copies of the May 1, 2013 through April 30, 2016 ACC-NJ CBA (the "ACC-NJ CBA") and the July 1, 2011 through May 31, 2016 BCA-NY CBA (the "BCA-NY CBA") are annexed hereto as **Exhibit C** and **Exhibit D**, respectively. A copy of the Memorandum of Understanding between the Union and the BCA-NY effective July 1, 2016 through April 30, 2019 is annexed hereto as **Exhibit E**.

11. The ACC-NJ CBA states "[t]his Agreement shall cover the entire Northeast Regional Council of Carpenters in New Jersey and New York and its member Local Unions." Ex. C, Art VIII.

12. The BCA-NY CBA states "[the] Agreement . . . shall remain in effect until May 31, 2016 . . . and shall continue thereafter from year to year unless either party notifies the other party in writing . . . that either party desires to modify this Agreement." Ex. D, Art. Thirty-Three.

13. Upon information and belief, neither party provided notice to the other to terminate the BCA-NY CBA.

14. To date, Respondent remains a member of the BCA-NY. A copy of the 2019 members designation list is annexed hereto as **Exhibit F**.

15. As a result, Respondent was also bound to the collective bargaining agreement covering July 1, 2016 through April 30, 2019 (and together with the ACC-NJ CBA and the BCA-NY CBA, the "CBAs"). A copy of the July 1, 2016 through April 30, 2019 CBA is annexed hereto as **Exhibit G**.

16. The CBAs requires Respondent, *inter alia*, to make contributions to the Funds for all work within the trade and geographical jurisdiction of the Union ("Covered Work"). Ex. C. Art. I, Art. XXIV § 5; Ex. D. Art. Sixteen, Section (a); Ex. G, Art. Sixteen, Section (a).

17. The CBAs further provide, that the Employer agrees that it is bound by and shall comply with the Agreements and Declarations of Trust and the Plans or other associated documents adopted by and governed by the Funds. Ex. C, Art. XXXI § 4; Ex. D, Art. Sixteen, Section (a); Ex. G, Art. Sixteen, Section (a).

18. The Trustees of the Funds established an Employer Contribution Audit and Collection Policy ("Collection Policy"). A copy of the Collection Policy is attached hereto as **Exhibit H**.

19. The Collection Policy defines "contributions" as the monetary contributions due to the Funds plus the supporting remittance report, shop report, or weekly payroll report. Ex. H, Art. 2.1(A).

20. The Collection Policy provides that, in the event that an employer refuses to comply with the CBAs' audit procedures, the Funds "shall determine the estimated amount of the employer's delinquent contributions based on the assumption that the employer's weekly hours subject to contributions for each week of the requested audit period are the highest number of average hours reported per week for any period of four consecutive weeks during the audit period.

A determination under this paragraph shall constitute presumptive evidence of delinquency." Ex. H, Art. IV, 4.8.

21. The Collection Policy provides that, in the event an employer fails to remit contributions to the Funds, the matter shall be sent to arbitration before the Funds' designated arbitrator. Ex. H, Art. 2.3(A).

22. The CBAs and the Collection Policy provides that the employer shall be liable for all costs incurred in collecting the delinquent contributions, including without limitation interest, liquidated damages, attorneys' fees, and arbitration fees. Ex. C, Art. XXVI, § 2; Ex. D, Art. Sixteen, Section (b); Ex. G, Art. Sixteen Section (b); Ex. H. Art. 1.1(C) (4-5) and Art. 6.1-6.3.

23. Pursuant to the Collection Policy, interest on delinquent contributions is to be calculated at the minimum rate of 0.75% per month, compounded. Ex. H, Art. 2.1(D).

24. A dispute arose when, in violation of the CBAs, Respondent failed to comply with the Funds' request to submit to an audit of its books and records for the period September 10, 2015 through April 1, 2019.

25. Pursuant to the Collection Policy, the Funds determined that Respondent owed an estimated amount of $1,862,128.78.

26. The Collection Policy provides that, "[l]iquidated damages shall be calculated from the Due Date, and shall become due and owing if suit is commenced. The amount of the liquidated damages shall be 20% of the delinquent Contributions." Ex. H, Art. 6.1.

27. Pursuant to the Collection Policy, Petitioners initiated arbitration before the designated arbitrator, J.J. Pierson. Petitioners noticed said arbitration by mailing a Notice of Intent to Arbitrate Delinquency to Respondent by Certified Mail. A copy of the Notice of Intent to Arbitrate Delinquency is attached hereto as **Exhibit I**.

28. Thereafter, the arbitrator held a hearing and rendered his award, in writing, dated September 6, 2019, determining said dispute (the "Award"). A copy of the Award is attached hereto as **Exhibit J**.

29. Pursuant to the Award, the arbitrator found that Respondent violated the CBAs when it failed to remit all required contributions to the Funds, and ordered Respondent to pay the Funds $1,862,128.78, consisting of an estimated principal sum of delinquent contributions of $1,862,128.78, plus interest and liquidated damages in an amount to be determined, attorneys' fees of $900, and the arbitrator's fee of $750. *See* Ex. J.

30. As of the date of this Petition, Respondent has failed to submit to an audit.

31. The Award has not been vacated or modified and no application for such relief is currently pending.

32. This petition is timely as it was filed within the one-year statute of limitations applicable to a petition to confirm an arbitrator's award.

33. Petitioners are entitled to the reasonable attorneys' fees and costs expended in this matter pursuant to the Award, the CBAs, and the Collection Policy. *See* Ex. C, Art. XXVI, § 2; Ex. D, Art. Sixteen, Section (b); Ex. G, Art. Sixteen Section (b); Ex. H. 1.1(C) (4-5) and Art. 6.1-6.3.

34. Copies of V&A's contemporaneous time records, reflecting all time spent and all activities performed in the prosecution of this matter by its attorneys and staff, are attached hereto as **Exhibit K**.

35. I, Marlie Blaise ("MB" in the accompanying billing records) am a 2018 graduate of Florida State University College of Law and an associate at V&A. My primary practice area is

the representation of multiemployer employee benefit plans in ERISA litigation. V&A billed my time at a rate of $225 per hour.

36. Nicole Marimon ("NM" in the accompanying billing records), is a 2014 graduate of Fordham University School of Law, and a partner at V&A. Since graduating law school and being admitted to the New York State bar, she has handled the prosecution of and served as lead counsel on numerous ERISA collections actions. V&A billed Ms. Marimon's time at a rate of $300 per hour.

37. V&A billed the legal assistants' time at a rate of $100 per hour for work performed in connection with this action.

38. In my experience, the foregoing hourly rates are similar to or lower than the rates typically charged by attorneys of commensurate skill and experience in similar actions in the Southern and Eastern Districts of New York.

39. V&A's total billings in this matter amount to $3,667.50 reflecting 15.8 hours of work. *See* Ex. K.

40. In addition, V&A will also advance $470 in court filing and service fees and postage upon the filing of the instant petition.

41. Accordingly, Petitioners are entitled to recover $4,137.50 in attorneys' fees and costs incurred in connection with this matter.

42. A Proposed Judgment is attached hereto as **Exhibit L**.

**WHEREFORE,** Petitioners respectfully request that this Court:

1. Confirm the Award in all respects;

2. Award judgment in favor of Petitioners and against Respondent in the amount of $1,862,128.78 pursuant to the Award, plus interest, liquidated damages, the

arbitrator's fee of $750, and attorneys' fees of $900, plus interest from the date of the Award through the date of judgment;

3. Award judgment in favor of the Petitioners and against Respondent in the amount of $4,137.50 in attorneys' fees and costs arising out of this petition; and

4. Award Petitioners such other and further relief as is just and proper.

Dated: New York, New York
       November 15, 2019

Respectfully submitted,

**VIRGINIA & AMBINDER, LLP**

By: /s/ Marlie Blaise
Marlie Blaise, Esq.
Nicole Marimon, Esq.
40 Broad Street 7th Floor
New York, New York 10004
Tel: (212) 943-9080
Fax: (212) 943-9082
*Attorneys for Petitioners*

-8-